# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **GOLDEN STATE FOODS CORP.** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CASE NO. 3:20-cv-00914-RAH-SRW** |
| ) | |
| **VINCIT INTERNATIONAL,** ) | |
| **INC., et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## FIRST AMENDED COMPLAINT

Plaintiff Golden State Foods Corp. ("Plaintiff" or "GSF") for its First Amended Complaint against Defendants shows as follows:

### The Parties, Jurisdiction, & Venue

1. Plaintiff GSF is a California corporation doing business in the state of Alabama by way of operating a food-processing mill that in turn distributes finished product to fast food restaurants around the United States.

2. Defendant Vincit International, Inc. ("Vincit") is a Tennessee limited liability company doing business as the parent or controlling principal over affiliated entity Stellar Management Group, Inc. d/b/a QSI, who in turn entered into certain contracts with Plaintiff to provide cleaning and sanitation services at Plaintiff's food processing mill in Opelika, Alabama.

3. Defendant Stellar Management Group Inc. d/b/a QSI ("QSI") is a Nevada corporation doing business in the state of Alabama that contractually agreed to supply GSF with competently trained individuals to perform cleaning services at Plaintiff's food processing mill.

4. FICTITIOUS DEFENDANTS A-D, whose names and identities are not yet known, are those individuals or businesses who were contractually and/or otherwise responsible for causing to exist, creating conditions for, and/or having control over certain cleaning operations the night of January 23, 2020 at Plaintiff's facility that resulted in contamination of unusable ground beef product in a negligent and/or wanton manner.

5. FICTITIOUS DEFENDANTS E-G, whose names and identities are not yet known, are those individuals businesses or corporations contractually and/or otherwise responsible for the training, retention, and hiring of certain individuals who were supplied to QSI and Plaintiff to perform cleaning services at Plaintiff's facility on or about January 23, 2020, including those individuals listed as Fictitious Parties A-D.

6. Ian Gonzalez is the individual responsible for placing a plastic bushing inside a grinder on the ground beef processing line on the night of January 23, 2020 and who was otherwise acting under the scope, authority, direction, supervision, and control of Vincit, QSI and/or Fictitious Defendants A-G.

45220469 v1

7. This Court possesses jurisdiction over the subject matter and the parties.

8. Venue is proper in this district court because the breach of Defendants' obligations, to include certain negligent or wanton acts of certain individuals who were acting under the scope and authority of Defendants, occurred in Opelika, Alabama.

## General Allegations

9. On or about January 23, 2020, after the conclusion of normal operations for the day, GSF's cleaning services supplier Defendant Vincit, acting by and through its affiliated corporation, QSI, was in the process of cleaning portions of the ground beef processing mill line in the normal scope of its employment / services agreement.

10. At some point during the evening hours, Ian Gonzalez, a sanitation team member and/or agent of Defendants, placed a plastic bushing inside a meat auger (or grinder). This plastic bushing was left inside the grinder without the knowledge or consent of GSF and/or its employees.

11. The next morning, when normal operations began, raw beef was run through the auger, as is the normal course of operation. It was not discovered until quality control found pieces of what later became known to be the plastic bushing placed (or caused to be placed) by Ian Gonzalez inside the auger.

12. Upon review of security video footage, it was confirmed that Ian Gonzalez, an employee or agent under the direction and control of Defendants, placed the plastic bushing in the grinder during the process of cleaning, but failed to remove it before his shift was concluded.

13. Before discovering what had occurred, GSF had lost over 10,000 cases of beef product and raw materials that, if not contaminated, would have been packaged and delivered to GSF's customers around the United States.

14. GSF sought to immediately mitigate its losses by removing the product from the processing line, shut down the mill, and cleaned out the line.

15. GSF gave proper notice to Defendants their agents and their insurer, of the losses incurred, making every effort to provide them the opportunity to inspect the damaged goods.

16. Defendants' acts or omissions, both independently as well as through the actions of its employees, agents, or subcontractors acting under the scope of authority and under the direction and control of Vincit, QSI, and Fictitious Parties A-D, were the direct proximate cause of the lost product. Vincit and QSI are therefore liable for all direct, consequential, and incidental damages arising from the negligent or wanton failures of performance, all of which were reasonably foreseeable under the circumstances.

45220469 v1

17. Upon information and belief, Vincit and QSI either independently and/or through outsourced employment services providers (including Fictitious parties E-G), failed to adequately train, monitor, supervise, and/or otherwise protect its agents and/or employees from causing the plastic bushing to be placed inside the meat grinder, thus resulting in significant loss of product.

18. GSF has incurred significant losses, to include loss of profits, cost of storage of the damaged goods for inspection by Vincit and QSI and their insurers, downtime, additional costs of mitigation, costs associated with the delivery of the product to storage, costs of clean up, potential land fill fees, attorney's fees and costs of this action, both now and into the future, and any additional losses which are allowed to be recovered by law which would make GSF whole.

## Count I
## Breach of Contract of Vincit, QSI and Fictitious Parties A-E

19. GSF re-avers and re-alleges the allegations contained in paragraphs 1 through 18 as if fully set forth herein.

20. Vincit, by and through its affiliated corporation QSI, entered into a contract with GSF on or about July 14, 2017 to supply labor as well as furnish supplies and equipment in order to provide necessary cleaning and sanitation of GSF's mill in Opelika, Alabama. (Operative Contract (ECF No. 1-1 at 11-20.)

45220469 v1

21. QSI agreed that it would "furnish the hiring, training, supervision, and control of its labor force as is necessary to perform the duties provided for in this Agreement." (ECF No. 1-1 at ¶ 2.3.)

22. QSI also agreed that it would perform "its duties hereunder as an independent contractor and in a manner which it deems in its own best judgment to be suitable for the purposes contemplated by this Agreement." (*Id.* at ¶ 2.4.)

23. As part of its agreement to perform these essential services, QSI agreed to procure adequate insurance at its own cost and expense to cover for losses incurred due to QSI's premises operations as well as any claims of contractual liability. (*Id.* at ¶ 4.1(b).) As part of this agreement, QSI agreed to furnish GSF certificates of insurance showing that QSI maintains this insurance along with certificates of insurance reflecting GSF would be treated as an additional insured. (*Id.* at ¶ 4.2.)

24. Additionally, QSI agreed to indemnify and hold GSF harmless from any claims, damages, or losses arising out of "the negligent or willful act or omission of the indemnitor's employees, agents or subcontractors during the performance of the responsibilities and duties of … this Agreement." (*Id.* at ¶ 9.)

25. The acts or omissions described above occasioned by and through Vincit, QSI and/or its agents and employees under the scope of its direction, supervision, authority, and control (Fictitious Parties A-E; and Ian Gonzalez), are breaches of QSI's Agreement to provide its services to QSI.

6

26. As a direct and proximate result of these breaches, GSF has been damaged and incurred significant losses, both now and into the future.

27. GSF's losses include both direct costs and fees as well as consequential and incidental damages reasonably foreseeable given the nature of Vincit and QSI's failures.

28. GSF has also incurred attorney's fees and costs associated with this action which shall continue into the future.

29. When demand was made for Defendants to honor their contractual obligations, Defendants refused, without merit, to honor their contractual obligations, to include the failure to name GSF as an additional insured under their insurance policies.

30. At all material times hereto, QSI was acting under the authority, control and direction of its parent corporation and/or affiliated parent, Vincit, such that Vincit is both independently and vicariously liable for QSI's acts or omissions and breaches of contract.

WHEREFORE, PREMISES CONSIDERED, GSF prays that this court awards compensatory damages allowed by law against Vincit, QSI, and Fictitious Defendants A-E to include costs and attorney's fees as allowed by law.

45220469 v1

## Count II
## Breach of Contract, Third Party Beneficiary - Fictitious Parties E-G

31. GSF re-avers and re-alleges allegations contained in paragraphs 1 through 30 as if fully set forth herein.

32. QSI agreed that it would "furnish the hiring, training, supervision, and control of its labor force as is necessary to perform the duties provided for in this Agreement." (ECF No. 1-1 at ¶ 2.3.)

33. Upon information and belief, QSI may have used temporary employees through an employment vendor agency, the details of which is otherwise unknown at this time and who are otherwise intended to be listed as Fictitious Parties E-G.

34. To the extent QSI sought to perform its contractual obligations by and through a separate contract with these employment agencies, GSF is an intended beneficiary of those contracts and, as such, any obligation extending to QSI by way of those agreements must be honored by Fictitious Parties E-G for the benefit of GSF.

35. Any failure of any agent, employee, or subcontractor of Fictitious Parties E-G to perform in a proper manner and method of reasonable performance and/or any act or omission which would constitute a material breach of their obligations to QSI must inure to the benefit of GSF such that GSF is an intended beneficiary of said agreements.

36. Furthermore, if Ian Gonzalez is considered an agent, employee, or subcontractor of Fictitious Parties E-G, then his/her actions in causing the contamination of ground beef, as alleged, then his/actions were under the authority, direction and control of Fictitious Parties E-G and as such, Fictitious Parties E-G are vicariously responsible for his/her actions.

37. As a result of the actions of Fictitious Parties E-G; and Ian Gonzalez, GSF was caused to incur losses, now and into the future.

WHEREFORE, PREMISES CONSIDERED, GSF prays that this court awards compensatory damages allowed by law against Fictitious Parties E-G, including costs and attorney's fees as allowed by law.

### Count III
### Negligence and Wantonness – Combined and Concurring as to All Defendants

38. GSF re-avers and re-alleges allegations contained in paragraphs 1 through 37 as if fully set forth herein.

39. The acts or omissions of Vincit and QSI, both independently and through their agents, employees and/or subcontractors (Ian Gonzalez; and Fictitious Parties A-D), were unreasonable under the circumstances and constitute a breach of the appropriate standard of care. The breaches thereof resulted in significant losses to GSF which were proximately caused by the acts or omissions of these Defendants.

40. The acts or omissions of Vincit and QSI's employment supplier (Fictitious Parties E-G) were unreasonable under the circumstances and constitute a

9

breach of the appropriate standard of care. The breaches thereof resulted in significant losses to GSF which were proximately caused by the acts or omissions of these Defendants.

41. The acts or omissions of Ian Gonzalez were unreasonable under the circumstances and constituted a breach of the appropriate standard of care. Acting on behalf of, under the direction, authority and control of Fictitious Parties A-G, Ian Gonzalez is not only liable for his/her actions, but also acts to create vicarious liability for those under whose control he was at the time of this loss.

42. The acts or omissions of all Defendants, combined and concurred to create a circumstance, condition, or scenario whereby it was reasonably foreseeable that loss or damage would naturally occur.

43. By virtue of Defendants' combined actions, significant losses were incurred and will continue to be incurred into the future.

44. To the extent the Court finds that actions of Defendants were otherwise malicious, reckless and wanton with regard to the life and safety of others or acted with ill will and intent to harm GSF, the Court should consider an appropriate penalty of punishment by way of awarding punitive damages against said Defendants.

WHEREFORE, PREMISES CONSIDERED, GSF prays that this court awards compensatory and punitive damages allowed by law against Defendants, to include costs and attorney's fees as allowed by law.

                                Respectfully submitted,

                                *s/ John P. Browning*
                                MICHAEL K. K. CHOY   (CHO001)
                                JOHN P. BROWNING   (BRO220)

                                Attorneys for Plaintiff
                                GOLDEN STATE FOODS CORP.

**OF COUNSEL:**

BURR & FORMAN LLP
420 North 20th Street
Suite 3400
Birmingham, Alabama  35203
Telephone:  205-251-3000
Facsimile:  205-458-5100
E-mail:  mchoy@burr.com

BURR & FORMAN LLP
RSA Tower, Suite 22200
11 North Water Street
Mobile, Alabama 36602
Telephone: 251-344-5151
Facsimile: 251-344-9696
E-mail:  jbrowning@burr.com

45220469 v1

## SERVICE VIA CERTIFIED MAIL

Pursuant to Federal Rule of Civil Procedure 4, Plaintiff requests that defendant Ian Gonzalez be served via certified mail upon the following:

Ian Gonzalez
c/o J. Scott McDearman
Grant Konvalinka & Harrison PC
633 Chestnut Street, Suite 900
Chattanooga, TN 37450-0900

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served on counsel of record herein via CM/ECF on this the 29th day of March, 2021, as follows:

Blake Lee Oliver
Samford & Denson, LLP
709 Avenue A
Opelika, AL 36801
oliver@samfordlaw.com

J. Scott McDearman
Grant Konvalinka & Harrison PC
633 Chestnut Street, Suite 900
Chattanooga, TN 37450-0900
smcdearman@gkhpc.com

*s/ John P. Browning*
OF COUNSEL

45220469 v1